**BOUND BROOK WATER COMPANY,
a corporation, et al., Plaintiffs,**

v.

**Sidney L. JAFFE et al., Defendants.
Civ. A. No. 109-68.**

United States District Court
D. New Jersey.
April 29, 1968.

Frohling & Gaulkin, by John B. M. Frohling, Newark, N. J., for plaintiffs.

Hannoch, Weisman, Stern & Besser, by Albert Besser, Newark, N. J., for defendants.

## OPINION

WORTENDYKE, District Judge:

This Court's jurisdiction in this action is predicated upon Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa and 28 U.S.C. § 1331. Plaintiff Bound Brook Water Company is a New Jersey corporation and plaintiffs, Senesy, Oak, Conroy, Brush, Fitzpatrick, Radcliffe, Van Nest and Perone are stockholders of that corporation owning 13,301 shares of stock therein out of a total of 72,000 shares.

The defendants, Jaffe, are stockholders of Middle Atlantic Utilities Co. The complaint alleges that the Jaffes, the corporation in which they are stockholders, Middle Atlantic Utilities Co., and Mayflower Securities, Inc., on or about December 1, 1967, solicited tenders by Bound Brook stockholders for the purchase of their stock in that corporation at a price of $10 per share and also solicited proxies for the purpose of voting said proxies at a certain stockholders' meeting to be held on January 10, 1968.

The first of the Eight Counts of the Complaint rests upon Sections 10(b) and 14 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j and 78n, and alleges that in their solicitations of tenders and proxies, the defendants made fraudulent misrepresentations, misstatements of material fact and material omissions respecting the condition of the affairs of Bound Brook, the value of its stock, the competency of its management, its financial status and other circumstances of and surrounding Bound Brook and the tender solicited. Count 2 is predicated upon the jurisdictional grounds asserted in Count 1 and, in addition thereto, upon 15 U.S.C. § 78cc(b) and alleges that the practices complained of in Count 1 rendered null and void the solicitations of proxies and the purchases of shares referred to therein. Count 3 rests upon 15 U.S.C. §§ 78aa and 78j and 17 C.F.R. 240.10b–5 and seeks relief against the defendant Mayflower Securities, Inc., for its alleged participation in assisting Middle Atlantic and the Jaffes in the consummation of the violations alleged in Counts 1 and 2. In Count 4 plaintiffs allege that the conduct complained of in the preceding counts amounted to a tortious corporate raid against Bound Brook. Count 5 alleges common law fraud and seeks recission of the stock sales made pursuant to the tender offer. Count 6 charges that all of the plaintiffs except Perone and Bound Brook were libeled by the defendants. Count 7 charges slander by the defendants of all the plaintiffs except Perone and Bound Brook. In Count 8 plaintiff Perone seeks damages based upon the violations asserted in Counts 1 and 2 and also seeks a declaration that the shares of stock which

he tendered to Middle Atlantic are rightfully his by reason of the fraudulent practices employed in securing such tender from him.

The defendants have addressed three motions to the complaint: (1) for a dismissal for failure to state a claim upon which relief can be granted; (2) for a declaration that this action may not proceed as a class action under F.R.Civ.P. 23(1); and, (3) for a stay of this action pending the determination of an action between the same parties involving similar facts and legal questions pending in the Superior Court of New Jersey.

■ Since both parties have presented affidavits supportive of their respective positions in this cause, the provisions of F.R.Civ.P. 12(b) require that the present motion to dismiss be treated as a motion for summary judgment under Rule 56.

■ Section 14 of the Securities Exchange Act of 1934, 15 U.S.C. 78n, provides, *inter alia,* that:

"(a) It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to Section 78*l* of this title."

It is nowhere alleged in the complaint before the Court that the securities which are the subject of this litigation are registered pursuant to 15 U.S.C. § 78*l* so as to fall within the jurisdictional confines of Section 14. Indeed, the defendants appear to contend in their brief, although not in any of the sworn statements made on behalf of their position, that just the opposite is true. If the latter is the case, then, of course, such

an impediment to the statutory basis of this Court's jurisdiction of this aspect of the case cannot be remedied by amendment. If the former be true, then the complaint should be amended to allege that fact in the manner outlined below. Assuming the requisite jurisdictional elements to be present on the proxy issue, I pause to add further comment on another insufficiency in this regard which should be rectified so as to avoid the spawning of the usual protracted and fragmented motion practice which appears to be prevalent in securities cases.

■■ Unlike the state of flux which presently marks the question of standing to sue under Section 10(b), the law is relatively clear that both a corporation and its individual stockholders have the proper standing to maintain an action under Section 14 of the Act. See J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) and Studebaker Corporation v. Gittlin, 360 F.2d 692 (2 Cir. 1966). However, corporate and individual standing to sue under Section 14 arises from the legitimate interests of both the corporation and its stockholders in protecting against an infringement upon corporate suffrage rights or to protect against some corporate action taken as a result of that infringement. Cohen v. Colvin, 266 F. Supp. 677, 685 (S.D.N.Y.1967). The complaint in this case is barren of any such allegations and is, therefore, fatally deficient in that regard. Therefore, it must, if indeed it can, be amended to correct that deficiency also. Finally on this proxy aspect, it appears from the facts presently before the Court that any dispute may now be academic since the stockholders meeting has been held and because there was a subsequent purchase by the defendants of the shares concerning which they had previously made proxy solicitations. However, because of the favored position of the plaintiffs at this posture of the litigation, the Court is precluded from dismissing this portion of the complaint upon those grounds.

Section 10(b) of the Act, 15 U.S.C. 78j, provides that:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\*    \*    \*    \*    \*    \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule 10b–5, 17 C.F.R. 240.10b–5, implementing the above mentioned statutory section states that:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

  (a) To employ any device, scheme, or artifice to defraud,

  (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

  (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

The defendants assert that neither the corporation nor the individual non-selling shareholder plaintiffs has the requisite standing to sue under Rule 10b–5. They rely, *inter alia*, upon Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2 Cir. 1952); O'Neill v. Maytag, 339 F.2d 764 (2 Cir. 1964) and Greater Iowa Corporation v. McLendon, 378 F.2d 783 (8 Cir. 1967). The plaintiffs, on the other hand, contend that the strength of the holdings in those cases has been greatly sapped by later decisions in the Second Circuit and they point to Vine v. Beneficial Finance Company, 374 F.2d 627 (2 Cir.) cert. den. 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967); A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2 Cir. 1967); Symington Wayne Corporation v. Dresser Industries, Inc., 383 F.2d 840 (2 Cir. 1967) and Entel v. Allen, 270 F.Supp. 60 (S.D.N.Y.1967) in support of their contention that both the corporation and non-selling stockholders of the corporation to whom a tender offer has been made by outsiders utilizing techniques which allegedly violate Rule 10b–5 have the requisite standing to sue under Section 10(b) of the Act.

In Vine v. Beneficial Finance Company, supra, the Court found that, as a result of a merger, Vine had become an involuntary "seller" whose original stockholdings in the corporation had been reduced to a claim for cash. In A. T. Brod & Co. v. Perlow, supra, the Court found that Brod was a "purchaser" under Rule 10b–5 even though, as a broker, Brod had made his purchases on behalf of others and not for his own investment purposes. I read those cases not as indicative of the proposition that a non-selling stockholder has standing to sue under Rule 10b–5 but rather that, in a transfer situation in which the complaining party's holding has been altered because of some act on the part of the defendant which allegedly violates Rule 10b–5, the concepts of seller and purchaser under Rule 10b–5 are not to be limited to the ordinary meanings ascribed to those terms. In Symington Wayne Corporation v. Dresser Industries, Inc., supra, the Second Circuit specifically left open the question of whether a non-selling plaintiff had standing to sue under Rule 10b–5 but assumed that such was the case, since it felt justified in affirming the lower court's denial of injunctive relief upon the merits.

It is true that in Entel v. Allen, supra, Judge Bonsal of the Southern District of New York, on a motion to reargue, reinstated a Rule 10b–5 claim which he had previously dismissed for lack of standing. He did so based upon his belief that the seller-purchaser requirement would be abandoned by the Second Circuit when that question was next presented before it. On the other hand in Greenstein v. Paul, 275 F.Supp. 604 (S.D. N.Y.1967), Judge McLean, of that same district, recognizing the possibility of a change in the law, dismissed a Rule 10b–5 suit precisely on the ground that the present state of the law precludes a non-seller or non-purchaser from maintaining suit under Section 10(b) of the Act.

The Second Circuit itself is apparently hard pressed to make a final determination on this issue as is evidenced by the recently decided case of Mutual Shares Corporation v. Genesco, Inc., 384 F.2d 540 (2 Cir. 1967). In that case, a corporation and certain of its stockholders sought injunctive and compensatory relief against the defendant corporation and its principal stockholder for allegedly deceptive practices violative of Rule 10b–5 utilized by the defendants in effecting a purchase of the majority interest in a third corporation in which the plaintiffs had also purchased stock, and for subsequent acts violative of the same Rule aimed at the purchase by the defendants, at depressed values, of the plaintiffs' holdings in the third corporation. The Court extensively reviewed the spectacular growth of the law in this area of the securities field. It then refused to hold that the plaintiffs had a right to sue under Rule 10b–5 on that part of their claim based upon conduct which induced the plaintiffs to purchase shares of the third corporation, as did the defendants, on the ground that such a holding " * * * would convert any instance of corporate mismanagement into a Rule 10b–5 case." Mutual Shares Corporation v. Genesco, Inc., supra, at 545.

Plaintiffs' second contention in the Genesco case was that, subsequent to the purchase of control of the third corporation, the defendant corporation allegedly engaged in certain manipulative practices violative of Rule 10b–5 with the intent to force the plaintiffs to sell to Genesco, at a price below the fair market value, the stock in the third corporation which the plaintiffs had purchased. The Court expressed doubt as to the ability of the non-selling plaintiffs to show any damage to the value of their stock which could be causally related to a transfer of other stock under Rule 10b–5. However, it held that the fact that the plaintiffs had not sold their stock was not controlling and upheld the right of the plaintiffs to seek injunctive relief. In reaching its decision, the Court stated that:

" * * * [T]he claim for damages on this theory founders both on proof of loss and the causal connection with the alleged violation of the Rule; on the other hand, the claim for injunctive relief largely avoids these issues, may cure harm suffered by continuing shareholders, and would afford complete relief against the Rule 10b–5 violation for the future. 'It is not necessary in a suit for equitable or prophylactic relief to establish all the elements required in a suit for monetary damages.' * * * [W]e hold that * * * [plaintiffs] have stated a claim under the Act and Rule 10b–5 for injunctive relief to prevent defendants from depressing the price of Kress stock by market manipulation or otherwise; insofar as the trial court dismissed any claim for damages for a violation of Rule 10b–5, it was correct." Mutual Shares Corporation v. Genesco, supra, at 547.

It is clear then, that the Second Circuit has not and, it appears, will not endorse a blanket approach to allowing non-selling or non-purchasing shareholders to maintain a Rule 10b–5 action every time there is a sale of stock of the corporation in which the plaintiffs own stock.

In *Genesco,* supra, the second portion of the Rule 10b–5 claim contained one factual element which is clearly lacking in the present case, and that is that the allegedly violative conduct was attributed to the controlling stockholders of the corporation. Consistent with the theory of upholding the right of a non-seller or a non-purchaser to sue under Rule 10b–5, where the alleged misconduct is attributable to those in corporate control, the Third Circuit Court of Appeals has recently held that:

"Given evidence sufficient to satisfy the preliminary requirements of the rule, we think that where, as here, a board of directors is alleged to have caused their corporation to sell its stock to them and others at a fraudulently low price, a violation of Rule 10b–5 is asserted. Certainly a fraud in the act of selling a security of the required kind is asserted. The only question which remains is whether the act of fraud is of the type embraced within the statute and the Rule. It it is contended that proof of 'deception' is required to bring the claim within the statute and implementing Rule. Obviously the definition of 'deception' may vary with the circumstances. But if a 'deception' is required in the present context, it is fairly found by viewing this fraud as though the 'independent' stockholders were standing in the place of the defrauded corporate entity at the time the original resolution authorizing the stock sales was passed.

\*   \*   \*   \*   \*   \*

[W]e are satisfied that our analysis of Rule 10b–5 calls for the conclusion that the corporation has standing, albeit derivatively here, to maintain an action under Rule 10b–5 in the present circumstances." Pappas v. Moss, 393 F.2d 865 (3 Cir. April 9, 1968).

■■ A review of the cases thus indicates that, at present, the issue of standing to sue under Rule 10b–5 on the part of a non-seller or a non-purchaser is a very intricate one indeed. One noticeable trend is the expansion of the concepts of purchaser and seller. Another trend is the expansion of standing to sue on the part of non-sellers and non-purchasers where the allegedly wrongful activity is attributable to the controlling faction in the corporation, and the result of that activity works to the detriment of the corporation and the minority stockholders. Neither of those factual patterns is present in the case before this Court. The Court would be hard put to justify the flood of litigation which would result if it were to espouse the view that a non-selling or non-purchasing stockholder has a right to sue under Rule 10b–5 every time there was a sale of some stock of his corporation in the course of which certain facts were disclosed or omitted which he felt impinged upon a fair transfer of that stock. A corporation is an entity separate and apart from its stockholders. Under the present state of federal law, neither a corporation nor its stockholders has any interest, *per se,* in the sale of another stockholder's shares to a third party. Certainly without a showing of something more, such an interest was not created by Rule 10b–5. By the same token, the trend of recent decisions indicates that the Court should not preclude a plaintiff from seeking relief under Rule 10b–5 merely because he was not, in the ordinary sense, a purchaser or seller of securities. Such a limitation on standing to sue is not explicitly contained in either Section 10(b) of the Act or in its implementing Rule. The question of standing to sue must be determined in the light of the statutory language invoked, the legislative history of that statute, the case law development surrounding that statute and, most importantly of all, the facts and circumstances surrounding the particular claim presented.

■ In spite of the liberality of construction to which complaints are entitled when attacked by a motion to dismiss under F.R.Civ.P. 12, see Melo-Sonics Corporation v. Cropp, 342 F.2d 856 (3 Cir. 1965), a complaint must em-

body certain essential elements which amount to the assertion of a claim cognizable by this Court under the statutory jurisdiction invoked and adequate to evoke an intelligent responsive pleading. Even under an expanded interpretation of Rule 10b–5, in order to state a claim under that Rule a complaint must contain at least the following items: (a) an act or acts allegedly violative of Rule 10b–5 performed in connection with a transfer of stock, (b) damage to the plaintiffs, and (c) a causal nexus between the act or acts allegedly violative of Rule 10b–5 and the damage to the plaintiffs. This complaint fails to meet that test.

This complaint does allege that certain acts or omissions in the solicitations of tenders by the defendants violated Rule 10b–5. However, it fails to adequately specify either the alleged damage to the plaintiffs or the causal relationship between the allegedly violative acts and the alleged damage. Therefore, it must be amended to present a claim containing these essential elements. As the Second Circuit Court of Appeals said in *Genesco:*

> "In the face of the broad language of Rule 10b–5 and the measured judicial treatment of it, it is most important to ascertain precisely the theory upon which plaintiffs sue." Mutual Shares Corporation v. Genesco, Inc., supra, 384 F.2d at 544.

While it appears that Mr. Perone, the plaintiff in Count 8, has no problem with standing under Rule 10b–5, having tendered his shares of stock, the papers presently before me indicate that his complaint is likewise insufficient in failing to specifically allege damage and a causal relationship between certain acts of the defendants which pertain to or evoked his tender and any resultant damage. Therefore, his claim must also be amended.

Because of the need to amend the complaint, I do not now pass upon the appropriateness of either of the class actions which the plaintiffs seek to assert. Nor do I now decide the propriety of staying this present litigation pending a determination of the causes now before the State court. Similarly I withhold any judgment upon the sufficiency of Counts 4 through 7 which assert claims which are allegedly pendent to the federal claims asserted in Counts 1, 2, 3 and 8. However, for purposes of judicial economy and to prevent unnecessary delay, I make the additional observation that the allegations of libel and slander contained in Counts 6 and 7 are insufficient to withstand a motion to strike in that they fail to set forth, *in haec verbis,* the defamatory language employed. The complaint will be dismissed, as to all the plaintiffs, but with leave to file an amended complaint complying with all the requirements of adequate pleading of the causes of action alleged, and a copy thereof served upon counsel for the defendants on or before May 20, 1968, in which event the defendants may address motions to or answer the amended complaint on or before June 10, 1968.

Let an Order in conformity with the foregoing Opinion be presented.