Raymond E. **BRITT**, Plaintiff,

v.

The **CYRIL BATH COMPANY** et al., **Defendants.**

**Civ. A. No. C 67–717.**

United States District Court
N. D. Ohio, E. D.

June 10, 1968.

On Motion for Reconsideration
Sept. 16, 1968.

Myron N. Krotinger, Charles W. Phillips, John E. Purdy, and Alan Arnold of Lane, Krotinger, Santora & Stone, Cleveland, Ohio, for plaintiff.

Thomas V. Koykka and Walter A. Bates, of Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO DISMISS

KALBFLEISCH, Chief Judge.

Plaintiff's amended complaint purports to set forth two causes of action. The first alleges violation by defendants of Title 15 U.S.C.A. § 78j and Rule 10b–5 of the General Rules and Regulations under the Securities Exchange Act of 1934. The jurisdiction of this Court is claimed to exist by virtue of Title 15 U.S.C.A. § 78aa. The second cause of action is based on non-federal grounds. Since no independent jurisdictional grounds are alleged for either cause of action, this Court's pendant jurisdiction of the latter claim arises only if the Court has subject matter jurisdiction of the first cause of action.

Defendants have moved pursuant to Rule 12(b), Federal Rules of Civil Procedure, as follows:

"1. To dismiss this action because the Court lacks jurisdiction over the subject matter;

"2. To dismiss this action because the amended complaint fails to state a claim against defendants upon which relief can be granted, * * *."

It is apparent, under the circumstances, that this Court's subject matter jurisdiction depends upon plaintiff's having stated a claim for relief under the provisions of the statute asserted, for if plaintiff's first claim, as well as the second, is one based only on non-federal grounds, mere reference to the federal statute is not enough to invoke the

jurisdiction of this Court under the provisions of Title 15 U.S.C.A. § 78aa. In this regard, the language of Judge Goodrich in Downing v. Howard, 162 F.2d 654, 655–656 (CA3, 1947) is appropriate:

"It is apparent that the question which we have to settle is whether the plaintiff has stated a basis for recovery under the federal statute just mentioned. If he has, the fact that he also asserts a non-federal ground does not lose him his privilege of suing in the federal court. On the other hand, if the substance of his claim is one based on state law, the reference to the federal statute is not enough to bring him into federal court, unless he has independent grounds for coming there. * * *"

In deciding a motion to dismiss the complaint, the Court must assume the existence of facts well pleaded, while mere conclusions of the pleader are not accepted as true. Sexton v. Barry, 233 F.2d 220 (CA 6, 1956). From a generous and liberal interpretation of the well-pleaded facts of the plaintiff's first claim, giving credence to their intendments favorable to plaintiff, the circumstances and "course of conduct of the defendants" complained of may be stated as follows:

The defendant The Cyril Bath Company is an Ohio corporation engaged in the manufacture of metal forming presses and equipment and of specially shaped parts. The seven named individual defendants are a majority of its Board of Directors, one of whom, Cyril J. Bath, is the President and Chief Executive Officer and principal shareholder. Defendants Cyril J. Bath and Georgiana Bath own or control over 60% of the outstanding shares of common stock. Plaintiff "at all times referred to" in the amended complaint has been a minority shareholder and currently owns 28,311 shares of the common stock, having succeeded to such ownership "partly by purchase, and partly by operation of law in that shares were distributed to him from a liquidating corporation of which he owned a majority of the outstanding shares; and said liquidating corporation owned said shares prior to the date of the acts of the defendants complained of * * *." (Complaint, para. 5.)

From 1944 to 1956, the defendant corporation acquired twenty-two patents, in twelve of which defendant Cyril J. Bath was the inventor. In 1956 there was a public offering of 33,000 shares of common stock, following which 241,545 shares were outstanding. An offering circular was prepared describing the company's business, processes, products, patent ownership and markets, and which represented that the company " 'has carried on a continuous and substantial program of improvement in machines of its present manufacture and in research and development into new methods of metal forming.' " (Complaint, para. 6e.)

From 1956 to 1966 the defendant corporation acquired thirty-five patents, in five of which the defendant Cyril J. Bath was the inventor. On June 29, 1961 defendant Cyril J. Bath assigned one of those five patents and a certain patent application to the defendant corporation in return for a royalty agreement with a stated minimum annual royalty. On February 5, 1962 the defendant corporation licensed a British company under the aforementioned patent and patent application, among others, the license agreement providing for a royalty, "one half of which would go to the Company, and one half of which would be subject to the claims of Cyril J. Bath." (Complaint, para. 6(i).) Report of other licensing agreements was made by the defendant corporation in its 1965 annual report, but "at no time since the entry into said agreements has any disclosure to stockholders and the financial community been made" by any of defendants herein "of said agreements and the scope and effect thereof." (Complaint, para. 6(j).) Pursuant to the royalty agreements complained of, the defendant corporation has paid certain royalty payments to the defendant Cyril J. Bath.

During the period since 1961 defendant The Cyril Bath Company "has acquired in excess of 22,500 shares of its common stock, and the number of shares held in its Treasury has increased from 885 in 1961 to 25,184 in 1967." (Complaint, para. 6(1).) In its reports to shareholders "from time to time" the defendant corporation has described such purchases of its common stock as follows:

" 'Treasury stock has been acquired by the Company as an investment. Our common stock has been selling in the Cleveland over-the-counter market at favorable prices considering its potential and we have attempted to take advantage of this situation.' " (Complaint, para. 7.)

Paragraph 7 of the amended complaint also sets forth the yearly earnings per share, the yearly book value per share and the bid price range for shares for the years 1961 through 1966. In paragraph 9 of the amended complaint plaintiff concludes that the common stock of the defendant corporation "has been selling at an earnings multiple significantly lower than other companies in the industry"; alleges that, by defendants' failure to disclose the royalty agreements with the defendant Cyril J. Bath and the moneys paid out thereunder, they have failed to disclose the true profits of the defendant corporation to the minority shareholders, with the result that plaintiff has "sold and disposed of shares under market conditions which have been adversely affected."

It is alleged that the defendants have used the mails and other instrumentalities of interstate commerce in reporting on company affairs to shareholders and others.

While plaintiff, by his first numbered cause of action, asks the Court for injunctive relief against defendants' alleged "course of conduct," the Court notes in passing that the second claim advanced incorporates by reference the allegations of the first and, by adding the allegation that the patent and patent application involved in the royalty agreements "are and rightfully belong solely to The Cyril Bath Company," seeks recision of the said agreements and an accounting for the moneys paid out thereunder.

Title 15 U.S.C.A. § 78j(b) makes it unlawful for any person, by use of any means or instrumentalities of interstate commerce or the mails, to employ "in connection with the purchase or sale of any security * * * any manipulative or deceptive device" in contravention of the rules of the Securities Exchange Commission. Rule 10b–5 of the Commission implements the statute by making it unlawful (1) to employ any device, scheme, or artifice to defraud; (2) to make any untrue statement of a material fact or to omit to state a material fact; or (3) to engage in any act which operates as a fraud or deceit. Both the statute and the rule require that the prohibited conduct be employed "in connection with the purchase or sale" of a security.

The plaintiff urges that the first claim set forth in the amended complaint is founded upon a violation of the above-mentioned statute and rule. The Court's analysis of the well-pleaded facts of the amended complaint convinces it that the first claim is not so founded. It is the Court's view that, reduced to its simplest aspects, this is an ordinary stockholder's suit for corporate mismanagement by directors, based upon alleged fraudulent diversion of corporate profits to the principal shareholder in the form of patent royalties.

Plaintiff urges that recent decisions by the United States Court of Appeals for the Second Circuit have approached the question of alleged 10b–5 violations with increasing liberality. A careful reading of the cases reveals, however, that although that court has afforded liberal interpretation of the reach of the statute and rule as to parties who may claim relief in the sale and purchase situation (A.T. Brod & Co. v. Perlow, 375 F.2d 393 (CA 2, 1967) ), and as to the nature of the conduct that may constitute fraud in violation of the statute

when connected with the sale and purchase of a security (Vine v. Beneficial Finance Company, 374 F.2d 627 (CA 2, 1967); Mutual Shares Corporation v. Genesco, Inc., 384 F.2d 540 (CA 2, 1967); Puharich v. Borders Electronics Co., Inc., C.C.H. Federal Securities Law Reporter, paragraph 92,141 (S.D.N.Y., 1968)), in no case cited by plaintiff has the court dispensed with the requirement of causality between the fraud alleged and some resultant purchase or sale of a security.

■■ The alleged fraud in this case concerns the defendant corporation's entering into royalty agreements with its principal shareholder in return for patent assignments by him to the corporation. Even the most generous reading of the facts alleged in the amended complaint fails to disclose a causal connection between this conduct and any resultant purchase or sale of a security. To paraphrase the language of the court in *Genesco*, supra, 384 F.2d at page 545, any stockholder could plausibly argue that in buying or selling shares he relied on implied representations of management not to mismanage and by such argument convert any instance of corporate mismanagement into a Rule 10b–5 case. This Court shares the view that such a result is unjustified. Allegations of directors' mismanagement coupled only to some ultimate speculative effect on the general market for a corporation's stock is a much too tenuous connection to support a claim under Rule 10b–5.

Defendants' motion to dismiss the amended complaint is sustained.

Numerous motions have been filed by the parties subsequent to the filing of defendants' motion to dismiss the amended complaint.

Defendants' motion filed March 6, 1968 for leave to file a reply brief in support of the motion to dismiss is sustained.

Defendants' motions filed November 7, 1967 and February 9, 1968 for protective orders staying the taking of the depositions of the defendants Robert A. MacKenzie, Elizabeth Bath MacKenzie, John H. Leonard, George P. Bickford, and Georgiana Bath are sustained.

Plaintiff's motion filed January 8, 1968 to disqualify counsel for defendants and to strike defendants' motions from the files is overruled.

Plaintiff's motion filed March 1, 1968 to show cause why defendants Elizabeth Bath MacKenzie and Georgiana Bath should not be held in contempt of court and for an oral hearing, and plaintiff's motion filed April 15, 1968 for leave to file a reply brief to plaintiff's motion to disqualify counsel for defendants and to strike defendants' papers are overruled.

Plaintiff's motion for summary judgment filed January 10, 1968 and plaintiff's motion for leave to file a reply brief in support of plaintiff's motion for summary judgment are moot and therefore are overruled.

On Motion for Reconsideration

On June 21, 1968, plaintiff filed a motion for reconsideration of the Court's order granting defendants' motion to dismiss. In its motion for reconsideration plaintiff states:

*"The gist of the fraud alleged in this case is the secrecy of the Corporation's royalty arrangements. The secrecy maintained by the Corporation and its controlling stockholders, had only one purpose. This purpose was to manipulate the market price in order to permit the steady, annual and regular accumulation of shares by the Corporation, year by year, over a number of years, from stockholders at prices necessarily adversely affected by the secrecy."*

The Court, after reconsideration of this matter, still is of the belief that this is an ordinary stockholder's suit for corporate mismanagement by the directors, and that the plaintiff has failed to disclose in the amended complaint any causal connection between the fraud alleged and some resultant purchase or sale of a security.

On August 26, 1968, plaintiff filed a supplemental brief in support of his motion for reconsideration, the purpose of which was to call to the Court's attention the recent case of SEC v. Texas Gulf Sulphur Co., F.2d (CA 2, August 13, 1968). This recent case, argues the plaintiff:

"\* \* \* indicates that the granting of the motion to dismiss by this Honorable Court in the case at bar does not accord with the purpose or with the authoritative interpretation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. sec. 78j(b), and Rule 10b–5 of the Securities and Exchange Commission."

The Court, after a careful review of SEC v. Texas Gulf Sulphur Co., supra, is of the opinion that the case at bar is clearly distinguishable therefrom. In *Texas Gulf Sulphur* the corporation issued false and misleading press releases which labeled reports that the company had made a substantial copper discovery as "exaggerated" and "without factual basis." Meanwhile the directors of the company and other insiders were buying up the stock of the company from unsuspecting shareholders in order to reap colossal profits when the true worth of the ore discovery was made public. The Court in *Texas Gulf Sulphur* held that a director or other insider who has knowledge of "material" information which might reasonably be expected to affect the market value of the securities, as well as to influence investors' decisions to buy or sell the securities, must disclose such information or be in violation of Rule 10b–5. At the same time, however, the Court stated:

"An insider's duty to disclose information or his duty to abstain from dealing in his company's securities arises only in 'those situations which are essentially extraordinary in nature and which are reasonably certain to have a substantial effect on the market price of the security if [the extraordinary situation is] disclosed.' Fleischer, Securities Trading and Cor-

porate Information Practices: The Implications of the Texas Gulf Sulphur Proceeding, 51 Va.L.Rev. 1271, 1289."

In the case at bar plaintiff has failed to equate defendants' failure to disclose the company's agreements with Cyril Bath with any acts essentially extraordinary in nature which are reasonably certain to have a substantial effect on the market price of the stock of the Cyril Bath Company if disclosed.

It is the Court's view that the case at bar, reduced to its simplest aspects, remains an ordinary stockholder's suit charging corporate mismanagement by directors, based upon alleged fraudulent diversion of corporate profits to the principal shareholder in the form of patent royalties.

Plaintiff's motion for reconsideration and for an oral hearing thereon are overruled.