**1006**

Harriet SALINGER, Trustee under the Will of Molly Steuer Shield, Deceased, on behalf of herself and on behalf of all other shareholders of Jones & Laughlin Steel Corporation similarly situated, Plaintiff,

v.

LING–TEMCO–VOUGHT, INC., and Mellon National Bank and Trust Company, Defendants.

Civ. No. 68–1093.

United States District Court,
W. D. Pennsylvania.

March 18, 1971.

Dickie, McCamey & Chilcote, Pittsburgh, Pa., for plaintiff.

Thorp, Reed & Armstrong, Pittsburgh, Pa., for Ling-Temco-Vought, Inc.

Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Mellon National Bank and Trust Co.

## MEMORANDUM

SORG, District Judge.

Plaintiff's complaint in the above styled action asserts a claim for damages allegedly occasioned by delays in making payment for 357 shares of Jones & Laughlin Steel Corporation (J&L) common stock purchased from her by Ling-Temco-Vought, Inc. (LTV) and in furnishing a certificate for 143, the remainder of 500 J&L shares transmitted by her for sale to LTV. In support of her claim she invokes the following provisions of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A.

78j(b) and Rule 10(b) of the Commission, 17 C.F.R. 240:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

Plaintiff also charges negligence in the handling of the transaction by Mellon National Bank and Trust Company (Mellon Bank), LTV's tender agent, pointing to a statement contained in LTV's offer, as follows: "Payment for shares tendered on or prior to June 6, 1968, will be made promptly thereafter."

The facts pleaded by the plaintiff, who, at all pertinent stages of the transaction complained of, acted through or was represented by competent legal and financial counsel, combined with uncontroverted affidavits filed on behalf of the defendants, clearly establish the following set of circumstances:

On February 7 and 8, 1968, the plaintiff acquired 500 shares of common stock of J&L at an average price of $51.62 per share. On May 14, 1968, she received an offer from LTV which reads, in pertinent part, as follows:

"To the Holders of Common Stock of Jones & Laughlin Steel Corporation:

Ling-Temco-Vought, Inc. offers to purchase from you and other holders of Common Stock of Jones & Laughlin Steel Corporation (the "Company"), all shares of such Common Stock (up to the limit hereinafter set forth) tendered in proper form at $85 per share net, in cash, under the terms set forth herein and in the Letter of Transmittal accompanying this offer. This offer will terminate at 5:00 P.M. New York City Time on June 6, 1968 unless extended. Payment for shares tendered on or prior to June 6, 1968 will be made promptly thereafter.

The price range of the Common Stock of the Company on the New York Stock Exchange for the 18-week period ended May 3, 1968 has been $57⅞ high, $45⅜ low.

Ling-Temco-Vought, Inc. will purchase all shares tendered up to 5,000,000 shares and may elect to purchase any and all shares tendered in excess of 5,000,000 shares. If more than 5,000,000 shares are tendered on or prior to June 6, 1968 and Ling-Temco-Vought, Inc. elects to purchase less than all shares tendered, the shares to be purchased will be selected on an approximately pro rata basis.

If fewer than 5,000,000 shares of Common Stock of the Company are tendered by 5:00 P.M. New York City Time on June 6, 1968, Ling-Temco-Vought, Inc. may, at its option, extend this offer to a date no later than June 17, 1968. Public notice of any extension will be given. All tenders are irrevocable until the shares are purchased or returned, regardless of any extension."

Accepting the conditions, she forwarded the 500 shares on May 17, 1968, with a letter of transmittal in which she stated:

"To: Mellon National Bank and Trust Company, Tender Agent
Stock Transfer Section
Mellon Square
Pittsburgh, Pennsylvania 15230
Gentlemen:

Referring to the Purchase Offer of Ling-Temco-Vought, Inc. (the "Purchaser"), dated May 14, 1968, to purchase shares of the Common Stock of

Jones & Laughlin Steel Corporation (the "Company"), at $85 per share net, the undersigned irrevocably accepts such offer on the terms and conditions therein and herein set forth and on the reverse hereof, and hereby deposits or irrevocably agrees to deposit with you the following certificates representing shares of such stock."

In conformity with the terms of LTV's offer, a check for $30,345.00 in payment of 357 shares, accompanied by the following statement was forwarded to her on June 20, 1968:

"LTV Ling-Temco-Vought, Inc.

We enclose a check covering payment, at the rate of $85.00 per share, of Jones & Laughlin Steel Corporation Common Stock purchased by Ling-Temco-Vought, Inc. in connection with their Purchase Offer dated May 14, 1968. Pursuant to the Offer, Ling-Temco-Vought, Inc. purchased 71.3% of the shares tendered.

This Bank will be preparing certificates representing shares not ·purchased under the Offer. These certificates will be forwarded in a separate mailing as soon as practicable.

Mellon National Bank and Trust Company, Tender Agent."

A certificate for the 143 shares not purchased by LTV was received by her on July 3, 1968.

It appears, therefore, that on May 17, 1968, plaintiff irrevocably committed her 500 shares for sale, in whole or in part, until June 17, 1968. She received payment for 357 shares at the stated price on June 20, 1968, together with a statement evidencing her continued ownership of 143 shares, and, on July 3, 1968, she received a certificate for the said 143 shares.

▪ This court has carefully reviewed the maze of organizational, decisional, clerical, mathematical and mechanical detail required in the processing of payment for 71.3% and of the issuance of 35,500 certificates for the re-

mainder of approximately 7.1 million shares of said stock which had been transmitted by the holders to five separate agents in connection with a tender offer by LTV for the purchase of 5,000,000 shares thereof, and does not find the slightest trace of avoidable delay in the performance of its responsibility by Mellon Bank as tender agent. Because it was not a party to any representations concerning the stock of J&L, the provisions of 10(b) of the Securities Exchange Act of 1934, supra, are not applicable to Mellon Bank.

▪ With respect to LTV, the provisions of 10(b) are likewise inapplicable, for the only representations attributable to it are dated May 14, 1968. Plaintiff advances no complaint of misrepresentation or omission by LTV concerning facts or circumstances existing on that date. She asserts, in fact, only a failure to perform a promise in futuro—to make payment promptly. Her cause of action, therefore, if any, is for a breach of contract, maintainable without the aid of Section 10(b) and devoid of any fraudulent act or omission within the thrust of Section 10(b). The conclusion is inescapable that it was not fraud which induced plaintiff to accept an offer of $85.00 per share on the terms stated for stock purchased three and a half months before at $51.62 per share.

▪ Finally, as indicated above, LTV's contractual obligation and its commitment to pay "promptly" if reasonably interpreted means not "instantly", but "without undue delay." A finding, in the face of the uncontroverted facts, that the plaintiff in this case sustained a loss, either because she was misled or because the transaction was negligently handled, would be grossly unwarranted.

See Bound Brook Water Company v. Jaffe, 284 F.Supp. 702 (D.C.N.J.1968) and cases cited therein.

An appropriate order granting the motion of defendants for summary judgment will be entered.