Richard FUCHS, on behalf of himself and all others similarly situated, and on behalf of and in the name of M. P. C., Inc., Plaintiff,

v.

SWANTON CORPORATION, M. P. C., Inc., A. Fred March, Norman F. Swanton, Eugene N. Scalercio, Alfred Shoenberg, Frederick M. Glass, Robert L. Hurd, Lyle E. Goodnight, James Roden, Barbara A. Moss, Steven Klein, Leroy Elbaum, and F. Eberstadt & Co., Inc., Defendants.

No. 78 CIV 6246 (LBS).

United States District Court,
S. D. New York.

Sept. 28, 1979.

Kass, Goodkind, Wechsler & Labaton, Edward Labaton, Samuel K. Rosen, Patricia I. Avery, New York City, for plaintiff.

Abraham I. Markowitz, New York City, for defendant M. P. C., Inc.

Gordon, Hurwitz, Butowsky, Baker, Weitzen & Shalov, New York City, for defendant March.

Harvey Lacon, New York City, for all other defendants.

SAND, District Judge.

Richard Fuchs, a shareholder in M.P.C., Inc. ("MPC") brings a class action, and a derivative action on behalf of MPC, against Swanton Corporation ("Swanton"), MPC, A. Fred March ("March"), Norman F. Swanton, F. Eberstadt & Co., Inc. and the officers and directors of Swanton.[1] Plaintiff, who seeks both injunctive and monetary relief, invokes this Court's jurisdiction under Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a) ("Securities Act"), Section 27 of the Securities Exchange Act of 1934 as amended, 15 U.S.C. Section 78aa ("Exchange Act"), and the principles of pendent jurisdiction. Defendants move to dismiss under F.R.Civ.P. 12(b)(1) and 12(b)(6). Defendant's motion is granted for the reasons stated herein, and plaintiff is granted leave to replead the derivative action for damages and his injunctive and state law claims.

1. The action against F. Eberstadt & Co., Inc. has been dismissed. See footnote 4, *infra*.

2. Of course, on a motion to dismiss, the factual allegations of plaintiff's complaint must be assumed to be true. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Plaintiff filed this amended complaint as of right pursuant to Rule 15(a) F.R.Civ.P.

3. The terms of the Stock Purchase Agreement and the sale of control by March to Swanton provided, in part, that:

(a) Swanton would pay March and members of his family:

## I. The Factual Background

In his amended complaint, plaintiff alleges[2] that by agreement between Swanton and March, dated March 15, 1978, Swanton on March 28, 1978 purchased 310,500 shares or 51% of the common stock of MPC from March and members of his family (the "March Holding").[3] The March Holding constituted a controlling interest in MPC. At the time of the stock purchase, Swanton, according to plaintiff, was primarily engaged in the business of selling coal tax shelters, and was in poor financial condition due to recent changes in the federal tax laws. Plaintiff contends that unless Swanton could effect a major acquisition at highly advantageous terms, Swanton knew it would have to terminate its business. Plaintiff further contends that Swanton, a poor merger partner, was able to achieve this goal through the acquisition of MPC only with the fraudulent support of March, who agreed to sell the March Holding at a premium price which Swanton could not afford to pay to MPC's other shareholders. The sale made available to Swanton the significant liquid assets that plaintiff claims MPC had on hand at the time of the transaction.

Upon the sale, March and his family members resigned as officers and directors of MPC and its subsidiaries. Swanton immediately placed three of its own officers and directors on MPC's five man board, thereby gaining complete control of MPC and its subsidiaries. With Swanton's minimal working capital and its poor business

(i) $1,450,000. cash, of which $1,250,000. would be paid on closing and the balance to be paid over a period of four (4) years; and

(ii) additional cash payable upon the termination of certain then pending litigation involving MPC.

(b) Swanton would effect a merger with MPC;

(c) The consideration to be paid to MPC's minority shareholders upon the merger was to be fair and would be equivalent to the consideration paid to March and members of his family.

prospects, Swanton needed MPC's assets to replenish the capital it had expended for the purchase. Thus, immediately after gaining control, Swanton engaged in a series of transactions with MPC whereby Swanton, to the detriment of MPC's minority shareholders, appropriated the assets of MPC to its own use. Plaintiff cites the following specific transactions:

1. The transfer of substantial sums to Swanton in the guise of loans at favorable interest rates. Loans bearing interest rates of 8¼% were made on May 23, 1978 ($50,-000); on June 10, 1978 ($100,000); on August 10, 1978 ($75,000); and on September 11, 1978 ($200,000).

2. Through its subsidiaries, NFS Services Inc. and Kenerco, Swanton borrowed $250,000 from MPC at an interest rate of only 8¼% at a time when Swanton had no working capital other than that appropriated from MPC.

3. Swanton caused MPC's subsidiaries to pledge their assets to secure Swanton's debts: On June 1, 1978, an MPC subsidiary executed a hypothecation agreement with Citibank, N.A. of a certificate of deposit owned by the subsidiary in the amount of $425,956.77 to secure Swanton's indebtedness to Citibank; on June 14, 1978, another certificate of deposit owned by an MPC subsidiary, this in the amount of $600,000, was also used to secure Swanton's indebtedness to Citibank. In sum, Swanton used over $1 million of MPC's current assets to secure Swanton's own debts.

4. Swanton pledged the foregoing assets to secure loans at interest rates higher than the rate which Swanton was simultaneously paying MPC for the monies Swanton "borrowed" from it.

As a result of these transactions, Swanton, according to plaintiff, was able promptly to replenish the working capital it expended to purchase MPC from March. Plaintiff claims that the net effect of the entire transaction was that MPC's working capital was used by Swanton to acquire the March Holding. Moreover, in October, 1978, allegedly in furtherance of Swanton's scheme to loot the assets of MPC, Swanton filed a registration statement with the Securities and Exchange Commission, pursuant to which Swanton proposed to exchange shares in a newly formed, wholly owned subsidiary of Swanton for MPC stock, thereby effecting a merger of Swanton and MPC. Plaintiff alleges that the registration statement is materially false and misleading.[4]

"Count I" of plaintiff's complaint is asserted derivatively on behalf of MPC against all defendants and is based on March's sale of his controlling block of MPC common stock to Swanton. Plaintiff claims that the sale violated Section 17 of the Securities Act,[5] Section 10(b) of the Securi-

---

4. Defendants have stated that this registration statement has been abandoned (Affidavit of Norman F. Swanton accompanying Defendants' Motion to Dismiss the Complaint, filed June 18, 1979), and plaintiff has represented to the Court that he was informed that the registration statement had not become effective and that the merger would not be consummated on the terms outlined in his amended complaint (hearing on Motion to Dismiss F. Eberstadt & Co., Inc. as Defendant, May 17, 1979). Accordingly, the representations contained in the registration statement standing alone are no longer suitable grounds for relief, although they may be relevant with respect to the question whether an updated amended complaint could state a viable claim for injunctive relief.

5. This section provides in relevant part:

"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

15 U.S.C. § 77q.

ties Exchange Act,[6] and Rule 10b–5,[7] promulgated thereunder, in that the defendants fraudulently concealed from MPC and its minority shareholders their intent to enter into the stock-purchase agreement, and further concealed Swanton's intention at the time of the agreement to appropriate MPC's assets in order to finance the purchase of MPC shares. Plaintiff contends that by virtue of such concealment, MPC's minority shareholders were precluded from seeking to enjoin the stock purchase agreement or from otherwise seeking to protect MPC's interest. Plaintiff seeks recovery on behalf of MPC for all damages sustained as a result of this transaction.

Count II, alleged individually and on behalf of the class of shareholders other than defendants who would receive Swanton shares upon the merger of MPC into Swanton, is based on the proposed merger. Plaintiff seeks injunctive relief and damages under Section 10(b) of the Exchange Act and Rule 10b–5, claiming that the merger is part of the same scheme to loot the assets of MPC and will force the minority shareholders to redeem their shares at an inequitable rate of exchange. The amended complaint contains the further claim that the allegedly false and misleading registration statement which defendants filed with the Securities and Exchange Commission pursuant to the plan of merger gives rise to a claim for relief under Section 17(a) of the Securities Act and under Section 10(b) of the Exchange Act.

Plaintiff's fourth count[8] is a state law claim for breach of fiduciary duty in the corporate waste of MPC's assets. Similarly, Count V, alleging common law fraud, Count VI, asserted by plaintiff and the class as third party beneficiaries of the Swanton-March contract provision that minority shareholders would be offered a price per share equivalent to that received by March, and Count VII, a corporate opportunity claim asserted against March, are all claims arising under state law.[9]

Defendants' motion to dismiss this action under F.R.C.P. 12(b)(1) and 12(b)(6) is based on their assertion that federal jurisdiction cannot be sustained over either Count I or Count II because plaintiff fails to satisfy the purchaser-seller requirement imposed under the anti-fraud provisions of the federal securities laws. Without federal claims, defendant continues, the pendent state claims must also be dismissed. Finally, defendants allege that the derivative counts against March in the amended complaint cannot be sustained because plaintiff failed to satisfy the demand requirement of F.R.Civ.P. 23.1.

---

6. This section provides in relevant part:
"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

    . . . . .

    (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."
15 U.S.C. § 78j.

7. This rule provides:
"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange:
    (a) To employ any device, scheme, or artifice to defraud.

    (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
    (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."
17 C.F.R. § 240.10b–5.

8. Count III of the amended complaint was brought against the investment banking firm of F. Eberstadt & Co., Inc., which, as noted *supra*, has been voluntarily dismissed from this action.

9. The Court has been informed by counsel to defendant MPC that on August 16, 1979, MPC commenced an action against March and others in the New York Supreme Court on the same ground asserted here in Count VII. This fact has been called to the Court's attention in connection with defendant MPC's contention

88

## II. The Purchaser-Seller Requirement in a Damage Action

█ The facts alleged by plaintiff in Counts I and II fail to sustain a claim that either he or MPC was a purchaser or seller of securities. Plaintiff has thus failed to satisfy the "*Birnbaum* rule" for standing to maintain a damage action under Section 10(b) of the Exchange Act and Rule 10b–5.[10] *Blue Chip Stamps v. Manor . Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.) *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952).

Plaintiff's main contention is that MPC was effectively the "purchaser" of the March Holding by virtue of the post-transaction loans it was forced to make to Swanton. Plaintiff claims that Swanton's assets were grossly insufficient to pay for the block of MPC shares, and that Swanton "bootstrapped" the purchase through the use of its working capital, followed by the replenishment of that capital with loans obtained by virtue of its control of MPC.

While the cases cited by plaintiff recount examples of this "bootstrap" technique, they are not apposite. In each of those cases, the claimant, a "bootstrap" victim, also participated in an actual purchase or sale of securities either directly related to or closely connected with the "bootstrap" transaction and, therefore, satisfied the purchaser-seller requirement. *See Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971) (claimant corporation sold its treasury bonds); *Drachman v. Harvey,* 453 F.2d 722 (2d Cir. 1971) (*en banc*) (claimant redeemed its publicly held convertible debentures); *Herpich v. Wallace,* 430 F.2d 792 (5th Cir. 1970) (claimant contracted to purchase stock in connection with a merger); *Shell v. Hensley,* 430 F.2d 819 (5th Cir. 1970) (claimant purchased savings and loan association stock); *Schoenbaum v.*

*Firstbrook,* 405 F.2d 215 (2d Cir. 1968), *cert. denied sub nom. Manley v. Schoenbaum,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969) (claimant issued treasury shares to its parent); *Dasho v. Susquehanna Corp.,* 380 F.2d 262, 269–70 (7th Cir.), *cert. denied sub nom. Bard v. Dasho,* 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470 (1967) (claimant issued its shares in exchange for shares or assets of another corporation in a merger).

In the instant case, MPC neither bought nor sold any securities, but merely provided indirect financing from its own assets for the actual purchaser. There is no suggestion in the cited cases that an allegation that a claimant financed a securities transaction without engaging in a purchase or sale to do so is a substitute for its being an actual purchaser or seller. The bootstrap alone fails to satisfy the purchase or sale requirement.

Plaintiff refers to the holding in *Zeller v. Bogue Electric Manufacturing Corp.,* 476 F.2d 795 (2d Cir. 1973), *cert. denied,* 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973) to establish that the MPC loans to Swanton constituted a purchase and sale of securities sufficient to establish an independent basis for this Court's jurisdiction over the derivative action for damages set forth in Count I. In *Zeller,* where loans made by a controlled corporation to its parent were evidenced by promissory notes, the court, concluding that as a result of the loans the subsidiary was an investor in the parent, held that under the Exchange Act, the notes were securities which provided a jurisdictional basis for a derivative 10b–5 claim by the subsidiary against the parent. The court explicitly limited its holding to those loans for which promissory notes had been issued and distinguished open account loans, which were found to be exempt from the Exchange Act definition of a security. *Id.* at 800.

In this case, plaintiff clearly alleges the existence of loans between MPC and Swan-

---

that the derivative claim should be dismissed for failure to make a demand upon MPC's board. *See* fn. 12, *infra.*

**10.** For the same reasons, § 17(a) of the Securities Act is inapplicable. The right to bring an

action under § 17(a) is limited to purchasers of securities. *Superintendent of Insurance of New York v. Bankers Life and Casualty Co.,* 430 F.2d 355, 359 (2d Cir. 1970), *rev'd on other grounds,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).

ton, but the complaint is silent as to whether any notes evidencing the alleged indebtedness were ever issued. Only in plaintiff's memorandum of law in opposition to defendant's motion to dismiss is it alleged that "in some instances", Swanton issued "notes bearing low paying interest rates" to MPC in exchange for the loans. It is not clear that the Swanton-MPC notes belatedly referred to by plaintiff would be classified as securities under the Exchange Act even if they do, in fact, exist. *See, Exchange National Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126 (2d Cir. 1976) (directing the district courts to look to the duration of the note and the circumstances surrounding its issue before determining whether it is a "security"). Indeed, plaintiff makes no allegations as to the nature of these notes even in his memorandum of law. Since the Court's disposition of plaintiff's injunctive and state law claims requires an amended complaint if this action is to proceed, the derivative claim for monetary damages is dismissed with leave to replead if the notes were in fact issued. If no notes were issued, the situation here is precisely that which was excluded from the *Zeller* holding, and this Court has no jurisdiction over the derivative claim; if the notes were issued, plaintiff must set forth in an amended complaint sufficient description thereof so that the question of whether those notes are "securities" under the Exchange Act [11] may be meaningfully addressed.

Since there is no allegation that either plaintiff as an individual or the class members purchased or sold securities in connection with the merger proposal challenged in Count II, the claim for monetary damages contained in that count is dismissed without leave to replead.[12]

### III. *The Purchaser-Seller Requirement in an Injunctive Suit*

Plaintiff contends that the purchaser-seller requirement does not apply to that portion of Count II of his amended complaint which seeks to enjoin the imminent merger of MPC into Swanton. Defendants respond that plaintiff has shown no reason why the requirement adopted in *Blue Chip Stamps v. Manor Drug Stores, supra,* should not apply since the exceptions to that rule all involve cases where a purchase or sale which might result in irreparable harm to the plaintiff was imminent; here, on the other hand, Swanton's merger plan has allegedly been abandoned.

■ It has long been held in this Circuit that a suit for injunctive relief under Section 10(b) of the Exchange Act may be maintained by plaintiffs who are not actual purchasers or sellers of securities in connection with the challenged transactions. *Mutual Shares Corp. v. Genesco,* 384 F.2d 540 (2d Cir. 1967) (current shareholders, including those who had not purchased or sold shares in connection with the alleged fraud, can challenge continuing 10b–5 violations). This rule has been consistently followed by this Circuit despite its adherence in damage claims to the purchaser-seller requirement first enunciated in *Birnbaum v. Newport Steel, supra.* Although the Supreme Court has left open the question of whether the purchaser-seller requirement applies in injunctive actions, the rationale stated in *Blue Chip Stamps* for limiting the class of plaintiffs in Section 10(b) damage actions does not apply with equal force in a suit for injunctive relief.

■ An action for monetary damages by a plaintiff who neither purchases no sells seeks "a largely conjectural and speculative

---

11. Even if the notes were issued and are found to be securities, there is also a question whether the Swanton-MPC loans are a basis for a 10b–5 challenge to the March-Swanton sale, or whether the notes are a valid jurisdictional basis only for a claim by the corporation limited to the damages it suffered as a result of the loans. The Court does not now address that issue.

12. Because we find that neither plaintiff nor the corporation qualifies as a purchaser or seller in order to assert a derivative claim for damages on behalf of the corporation, there is no need to decide here whether plaintiff has fulfilled the demand requirement.

recovery in which the number of shares involved will depend on the plaintiff's subjective hypothesis." *Blue Chip Stamps v. Manor Drug Stores, supra,* 421 U.S. at 734–35, 95 S.Ct. at 1925. Such a danger, however, does not inhere in an action for injunctive relief. *Hundahl v. United Benefit Life Insurance Co.,* 465 F.Supp. 1349 (N.D. Tex.1979). Moreover, while proof that a plaintiff who has neither purchased nor sold *would* have bought or sold but for some action on the part of the defendant is both speculative and virtually irrebuttable, a claim for an injunction avoids this danger. The plaintiff requesting injunctive relief must demonstrate instead that the continuation of past and present practices will in fact injure him, a question which will not hang wholly on subjective evidence. *Hundahl v. United Benefit Life Insurance Co., supra.*

The Supreme Court in *Blue Chip Stamps* also expressed concern with the danger of creating an infinitely broad class of plaintiffs whose claims, due to their uncorroborated oral proof, are virtually impossible to dispose of before trial. *Blue Chip Stamps v. Manor Drug Stores, supra,* 421 U.S. at 742–43, 95 S.Ct. 1917. This danger does not exist where the claim is one for an injunction: the number of shareholders is finite, and their claims and status do not turn on oral testimony alone. *Hundahl v. United Benefit Life Insurance Co., supra.* Finally, while the Securities and Exchange Commission could doubtless seek to halt the practices involved, "present shareholders are also logical plaintiffs to play 'an important role in enforcement' of the Act in this way." *Mutual Shares Corporation v. Genesco, Inc., supra,* citing *Studebaker Corp. v. Gittlin,* 360 F.2d 692, 698 (2d Cir. 1966).

A number of other courts have continued to hold even after *Blue Chip Stamps* that a plaintiff seeking only injunctive relief need not satisfy the *Blue Chip Stamps* standing requirement. *See Tully v. Mott Supermarkets,* 540 F.2d 187, 194 (3rd Cir. 1976); *Hun-*

*dahl v. United Benefit Life Insurance Co., supra.* In accord with both these decisions and the long held view in this Circuit, we hold that inasmuch as plaintiff is a present stockholder, his lack of purchaser or seller status generally does not preclude him from seeking the injunctive relief sought in Count II of his amended complaint.[13]

Defendants' attack on plaintiff's claim for injunctive relief, however, is centered on defendants' allegation that such relief is now moot because the registration statement pertaining to the merger has become stale and the merger plan has been declared abandoned. The Court agrees with the defendants that to the extent that plaintiff's claim was grounded on allegations of misleading disclosures in the registration statement, the plaintiff's claim may, to some extent, be considered moot. However, defendant Swanton's carefully worded assertion that "Swanton presently considers its previous attempt [of merging MPC into Swanton] . . . abandoned", does not satisfy the Court that there is no further danger. Affidavit of Norman F. Swanton, sworn to June 18, 1978 (sic) ¶ 6. If it is true, as plaintiff asserts, that Swanton's financial situation is so precarious that merger with another corporation is essential to its survival, the adoption of an amended plan of merger in the near future is a likely prospect. This likelihood gains added force when viewed in light of the allegations that Swanton's promise to promote a merger was part of the contract of sale with March for the March Holding, and that substantial amounts have already been loaned, and pledged as guarantees for loans to Swanton. These facts suggest that plaintiff in a properly pleaded complaint may well be able to show sufficient danger of injury to the corporation or to its minority shareholders to support an injunction against the merger. See, *Condon v. Richardson,* 411 F.2d 489 (7th Cir. 1969).

---

13. Since we find that the purchaser or seller requirement is not a bar to plaintiff's assertion of a claim for an injunction against the merger under § 10(b) and Rule 10b–5, it is unnecessary for us to consider whether his § 17(a) claim would survive similar scrutiny. See n.10, supra.

IV. *Defendants' Motion to Dismiss for Failure to State a Claim*

■ Although plaintiff's claim for injunctive relief survives the jurisdictional and "mootness" defenses raised by defendant, the Court finds that the allegations contained in the complaint are insufficient to state a claim for injunctive relief under federal securities laws. To the extent that the contents of the registration statement are excluded from consideration in connection with plaintiff's challenge to the merger, the pleadings are barren of any allegation of non-disclosure or misrepresentation of material fact, an essential element of a claim under Section 10(b) and Rule 10b–5. In *Santa Fe Industries v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), the Supreme Court clearly held that a claim of fraud or breach of fiduciary duty states a cause of action under Rule 10b–5 only where there is actual deception or misrepresentation by the controlling shareholder; mere unfairness is not enough. Here plaintiff bases his claim of fraud on the charges that the intended merger is the final element of an on-going scheme by defendants to force MPC to purchase its own shares from March at an excessive price, and that Swanton intends to use its control of MPC to appropriate all of MPC's assets for Swanton's own use once the merger is complete. These allegations are insufficient to state a claim under Rule 10b–5 absent a specific claim of deception or misrepresentation. *Sante Fe Industries v. Green, supra.*

■ Plaintiff also claims that Swanton, the majority shareholder, is fraudulently using its control to cause injury to the minority shareholders in the merger transaction. In a case such as this, where there is arguably a conflict of interest between MPC, its controlling shareholder, and its newly elected board members, plaintiff's allegation would be sufficient to state a claim of deception of the corporation (in effect, of its minority shareholders) if there was also an allegation of nondisclosure or misleading disclosure as to the material facts of the transaction. *Goldberg v. Meridor*, 567 F.2d 209 (2d Cir. 1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978). Although it may be that a failure to disclose the existence of the conflict here would be sufficient to establish a claim of deception, *see Kaplan v. Bennett*, 465 F.Supp. 555 (S.D.N.Y.1979), the amended complaint alleges no facts as to the representations made to the minority shareholders. The Court cannot tell from the complaint what was disclosed or what plaintiff claims should have been disclosed but was instead omitted.[14]

■ In any case, even if this Court were able to imply specific acts of deception from the facts alleged, the amended complaint fails to meet the pleading requirement of F.R.Civ.P. 9(b) that the circumstances constituting fraud be stated with particularity. This requirement has been applied in this Circuit to complaints alleging Section 10(b) violations. *See, e. g., Ross v. A. H. Robins Co., Inc.*, 607 F.2d 545 (2d Cir. 1979); *Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978); *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972); *Shemtob v. Shearson, Hammill & Co., Inc.*, 448 F.2d 442, 444 (2d Cir. 1971); *Helfant v. Louisiana & Southern Life Insurance Co.*, 459 F.Supp. 720 (E.D.N.Y.1978); *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 518, 521 (S.D.N.Y.1977); *Rich v. Touche Ross & Co.*, 68 F.R.D. 243 (S.D.N.Y.1975). Conclusory allegations of fraudulent conduct or deception are insufficient under F.R.Civ.P. 9(b) without specific allegations of fact. *Shemtob v. Shearson, Hammill & Co., Inc., supra.* Here, plaintiff has broadly alleged that defendants participated in a scheme to defraud the minority shareholders, but has not identified the misrepresentations with sufficient particularity.

■ Because the injunctive claim in Count II of the complaint as now framed

---

14. The same defect exists with regard to plaintiff's claim that Swanton's financial condition is cause for concern, a fact which if omitted from disclosure in a transaction such as this would give rise to a claim of deception under *Goldberg v. Meridor, supra,* at 218, n.8. Without allegations of nondisclosure, however, a claim under § 10(b) is not adequately set forth.

lacks the necessary allegations of deception to state a claim under Section 10(b) and Rule 10b–5, defendants' motion to dismiss is granted. However, the Court recognizes that the defendants' abandonment of the registration statement subsequent to the filing of this amended complaint is the cause of some of the deficiencies in the complaint we have noted. It is entirely appropriate, therefore, that plaintiff be granted leave to replead, update and clarify his contentions and to remedy, to the extent the facts and circumstances permit, the deficiencies noted herein. 6 Wright & Miller, *Federal Practice and Procedure* § 1359.

### Pendent State Claims

Plaintiff invokes this Court's jurisdiction over the state law claims asserted in Counts IV–VII under the doctrine of pendent jurisdiction. Our decision of this issue is governed by the language of the Supreme Court in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), which states:

> "Certainly if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well [footnote omitted]."

*Id.* at 726, 86 S.Ct. at 1139. Because the amended complaint in its present form fails to state a claim on which relief may be granted under federal law, the state law claims alleged in Counts IV, V, VI, and VII are also dismissed without prejudice to their reassertion in an amended complaint.

Accordingly, the complaint is dismissed with leave granted to plaintiff to file, within forty-five (45) days from the filing of this opinion, a second amended complaint in conformity with this opinion.

SO ORDERED.