Joel PACKER and G & P Independent Management Corp., on behalf of themselves and as shareholders of Graphic Scanning Corp., in part derivatively in the right of Graphic Scanning Corp., Plaintiffs,

v.

Barry YAMPOL, Nathan Bellow, Arthur J. Radin, Stanley Itskowitch, and Michael Beckman, Defendants,

and

Graphic Scanning Corp., Nominal Defendant.

No. 86 Civ. 1841 (WCC).

United States District Court, S.D. New York.

March 25, 1986.

Willkie Farr & Gallagher, New York City, for plaintiffs Joel Packer and G & P Independent Management Corp.; Gerald Kerner, of counsel.

Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, for defendant Barry Yampol; Melvyn I. Weiss, Robert P. Sugarman, Alan Schulman, Jeremy Heisler, Robert A. Wallner, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Nathan Bellow, Arthur J. Radin, Stanley Itskowitch, and Michael Beckman; Robert L. Laufer, Alisa D. Shudofsky, of counsel.

Spengler, Carlson, Gubar, Brodsky & Frischling, New York City, for Nominal defendant Graphic Scanning Corp.; Edward Brodsky, Robert Knuts, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Plaintiffs Joel Packer ("Packer") and G & P Independent Management Corporation ("G & P") are beneficial owners of 10,100 and 100 shares respectively of the common stock of Graphic Scanning Corporation ("Graphic"). They commenced this action against the members of Graphic's board of directors alleging violations of section 10(b) of the Securities Exchange Act of 1934 ("the '34 Act"), 15 U.S.C. § 78j(b) (1982), Securities and Exchange Commission rule 10b–5, 17 C.F.R. § 240.10b–5 (1985), and the laws of the state of Delaware. Subject matter jurisdiction is predicated upon section 27 of the '34 Act, 15 U.S.C. § 78aa (1982), and the doctrine of pendent jurisdiction.

This matter is now before the Court on defendants' motion (1) to dismiss plaintiffs' complaint; (2) to disqualify plaintiffs' counsel; or (3) in the alternative, to stay this action pending decision of a shareholder derivative action pending in the Delaware Chancery court. For the reasons set forth below, defendants' motion to dismiss the complaint is granted.

*Background*

On a motion to dismiss, the Court must accept as true the facts alleged in the complaint. *See Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972) (per curiam); *Joyce v. Joyce Beverages, Inc.*, 571 F.2d 703, 706 (2d Cir.), *cert. denied*, 437 U.S. 905, 98 L.Ed.2d 1135 (1978). Accordingly, for the purposes of this motion, the relevant facts are as follows:

Plaintiffs allege that, beginning in 1981 and continuing to date, defendant Barry Yampol ("Yampol"), chairman of Graphic's board of directors, has been systematically stripping Graphic of its assets and converting them to his own benefit. Plaintiffs allege that the other defendants, the balance of Graphic's board of directors, are under Yampol's influence and control, and have acquiesced in Yampol's looting of the corporation.

Plaintiffs allege that since 1981, defendants have caused Graphic to issue proxy statements, registration statements, and press releases containing material misrepresentations and omissions with respect to Yampol's dealings with the corporation. Plaintiffs allege that as a result of these misleading statements and omissions, all of which they claim caused the price of Graphic stock to be artificially inflated, they purchased Graphic stock relying on the "integrity of the market and/or the statements made." Verified Complaint ¶ 58. Plaintiff Packer purchased shares of Graphic stock sometime shortly after August 15, 1984 at $7.375 per share. Plaintiff G & P purchased Graphic stock on February 24, 1986, four days prior to the filing of this lawsuit, at an undisclosed price. Packer and G & P have not sold their stock; they continue to hold the shares to date.

Plaintiffs' complaint asserts five claims against defendants based on their alleged misdeeds. Plaintiffs assert their first claim for relief in their individual capacities; it charges defendants with violations of section 10(b) and rule 10b-5. Plaintiffs assert the second through fifth claims derivatively on behalf of Graphic; those claims charge defendants with common law fraud, breach of fiduciary duty, waste of corporate assets, and misappropriation of corporate opportunities. Plaintiffs have named Graphic as a nominal defendant on these derivative claims.

Plaintiffs do not seek damages, but only injunctive and declaratory relief. They have requested, *inter alia,* (1) a declaration invalidating certain agreements between Graphic and defendants; (2) a permanent mandatory injunction requiring defendants to correct the allegedly false and misleading statements mentioned above; (3) a permanent injunction enjoining defendants from acquiring or voting Graphic stock or proxies until thirty days after defendants have corrected the allegedly false and misleading statements; (4) a permanent injunction enjoining defendants from selling Graphic's assets outside the ordinary course of business until directors elected at the next annual meeting of Graphic's shareholders have taken office; (5) a permanent injunction enjoining defendants from violating the federal securities laws, defrauding Graphic and its stockholders, breaching their fiduciary duties, wasting corporate assets, or misappropriating corporate opportunities; and (6) a permanent injunction enjoining Graphic from indemnifying defendants for any expenditures they may incur in the defense of this action without first obtaining the approval of a majority of Graphic's shareholders.

As noted above, defendants have moved to dismiss the complaint against them. They advance the following grounds in support of their motion to dismiss plaintiffs' non-derivative federal securities claim: (1) Graphic is an indispensable party to this claim; (2) plaintiffs lack standing to assert a 10b-5 claim; (3) the alleged misstatements are not material misrepresentations but merely pejorative characterizations of actions which were fairly described in the underlying documents; and (4) plaintiffs have not pleaded their allegations of fraud with sufficient particularity.

Defendants note, of course, that if I dismiss plaintiffs' securities claim, *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), requires that I also dismiss plaintiffs' four derivative state law claims. In addition, defendants advance the following independent grounds for dismissing those claims: (1) plaintiffs are inadequate derivative representatives; (2) plaintiffs seek to challenge actions that took place before they became Graphic shareholders; (3) plaintiffs failed to make a demand on Graphic's board of

directors prior to commencing this action; and (4) the derivative claims are not pendent to plaintiffs' federal claim because the state law claims will substantially predominate and do not arise out of a common nucleus of operative fact.

Defendants have also moved to disqualify plaintiffs' counsel, Willkie Farr & Gallagher, from prosecuting the derivative claims because the law firm also represents some of Graphic's competitors, and therefore has a conflict of interest. Finally, defendants have moved to stay the derivative claims because there is a prior action pending in the Delaware Chancery court challenging all of the acts and transactions complained of here.

For the reasons set forth below, I agree with defendants that plaintiffs lack standing to assert a 10b–5 claim for the relief they seek. I need not and do not address defendants' other attacks on the securities claim. Moreover, having concluded that plaintiffs' federal claim must be dismissed, I decline to exercise pendent jurisdiction over plaintiffs' derivative state law claims. Those claims must therefore be dismissed as well.

*Discussion*

At the outset, I note that the Court's function in passing on defendants' motion to dismiss is a limited one. It is not to assess the strength or weakness of plaintiffs' case, but only to determine whether they are entitled to offer evidence in support of their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). I may properly dismiss plaintiffs' complaint only if it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Although this is indeed a liberal standard, I nonetheless conclude that plaintiffs' complaint fails to meet it.

 In order to state a claim for relief under rule 10b–5, a plaintiff must allege in his complaint the following five elements: (1) the defendant made misrepresentations or omissions in connection with a purchase or sale of securities; (2) the misrepresentations or omissions were material; (3) the defendant acted with scienter; (4) the plaintiff relied on the misrepresentations or omissions; and (5) as a result, the plaintiff suffered damage or injury. *Fisher v. Plessey Co.,* [1984 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 91,687, at 99,475 (S.D.N.Y. Sept. 21, 1984) (citing *Rosenbloom v. Adams, Scott & Conway, Inc.,* 521 F.Supp. 372, 379 (S.D.N.Y.1981), *aff'd mem.,* 688 F.2d 816 (2d Cir.1982)). The complaint in this case does not satisfy the last element. It fails to allege, except in the most conclusory terms, that plaintiffs have suffered an injury; moreover, to the extent plaintiffs have suffered an injury as a result of defendants' misrepresentations, it is impossible to see how the relief they seek will remedy it. Accordingly, I conclude that plaintiffs lack standing to bring a federal securities action to challenge defendants' alleged misconduct.

It is essential to review precisely the nature of plaintiffs' claim, and the nature of the relief they seek. *See Mutual Shares Corp. v. Genesco, Inc.,* 384 F.2d 540, 544 (2d Cir.1967). Plaintiffs allege that defendants' misrepresentations and omissions caused the price of Graphic stock to be "artificially inflated." However, plaintiffs have not alleged how this inflation of the price has damaged them. For instance, they do not allege that because the price of the stock was artificially inflated, the return on their investment has been less than it would have been if the price had not been inflated. Indeed, since plaintiffs allege that defendants' misrepresentations and omissions continue to date, it is logical to infer that any artificial inflation of the price of Graphic stock also continues. In that case, plaintiffs have not been damaged because they could sell their stock at an equally inflated price. Indeed, at a pretrial conference with the Court, plaintiffs conceded that on paper they have profited from their purchases of the stock.

Moreover, even if plaintiffs did suffer some pecuniary loss by having to pay too

much for their shares, the relief they seek is not logically related to remedying that loss. As noted above, plaintiffs do not seek damages, but only injunctive relief in the form of disclosures to correct the alleged misrepresentations and omissions made in the proxy statements, registration statements, and press releases previously issued by the corporation. If such corrective disclosures were ordered, they would almost certainly cause the price of Graphic stock to drop. Thus, ironically, the very relief that plaintiffs seek could become the cause of their only injury.

In any event, the disclosures that plaintiffs seek could not compensate them for any pecuniary loss they suffered in paying an inflated price for the stock. Just as rule 10b–5 requires some correlation between the alleged fraud and the harm suffered, there likewise must be some connection between the harm suffered and the relief sought. The federal securities laws do not give one who has suffered no injury a commission to act as a private attorney general to enforce the laws, nor a warrant to invoke remedies of no benefit to himself.

Of course, since this is an action only for injunctive relief, it is not necessary that plaintiffs allege money damages. *See Jewelcor, Inc. v. Pearlman*, 397 F.Supp. 221, 245 (S.D.N.Y.1975). It is necessary, however, that plaintiffs allege that they have suffered some kind of harm. Plaintiffs attempt to satisfy that requirement with a conclusory allegation that they have been "irreparably harmed" by defendants' conduct. Verified Complaint ¶ 61. Plaintiffs' only factual allegation in support of this conclusion is that defendants' "conduct has seriously impeded and will continue to impede the ability of the investing public to evaluate the value of Graphic's stock." *Id.* Plaintiffs add simply that they "have no adequate remedy at law." *Id.* ¶ 62.

Once again, however, the complaint fails to allege how the public's alleged inability to evaluate the value of Graphic stock could hurt plaintiffs. Plaintiffs have not alleged, and could not truthfully allege, that if they were to sell their shares, they would suffer a loss as a result of defendants' alleged misrepresentations and omissions.

Plaintiffs nonetheless argue that the Court is not free at this stage of the proceedings to conclude that they have not suffered an irreparable injury that would entitle them to the relief they seek. They note, as I did above, that on this motion to dismiss, the Court must take as true all of the facts alleged in the complaint. They then argue that because they have pleaded, however conclusorily, the two elements of a claim for injunctive relief—irreparable harm and inadequacy of legal remedies—defendants' motion to dismiss must be denied. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, to Disqualify Plaintiffs' Counsel, and Alternatively, to Stay at 12–13 [hereinafter cited as "Plaintiffs' Mem."].

This argument distorts the rules applicable to a motion to dismiss. The Court must indeed accept as true all of the *factual* allegations of the complaint, as well as all reasonable inferences that can be drawn therefrom, but I need not and do not accept legal conclusions that are not supported by factual allegations. 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1357, at 595–96 (1969). Plaintiffs bear the burden of pleading facts in support of each element of their 10b–5 claim, and they have not pleaded *facts* constituting an injury. They cannot satisfy the burden of alleging an injury, even under the relaxed standards of notice pleading, simply by incanting the talismanic phrase "irreparable harm." If that were sufficient, motions to dismiss would be rendered useless as a means of disposing of groundless claims.

Plaintiffs argue that, in any event, they need not allege an injury in order to bring an action for injunctive relief because they have alleged that the investing public has been misled by defendants' conduct. Plaintiffs' Mem. at 14–15. In support of this argument, they rely on numerous cases in which courts have relaxed the standing requirements of rule 10b–5 in order to permit plaintiffs to bring actions for injunctive

relief. *See, e.g., Davis v. Davis,* 526 F.2d 1286 (5th Cir.1976); *Kahan v. Rosenstiel,* 424 F.2d 161 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); *Mutual Shares Corp. v. Genesco, Inc.,* 384 F.2d 540 (2d Cir.1967); *Hanna Mining Co. v. Norcen Energy Resources, Ltd.,* 574 F.Supp. 1172 (N.D.Ohio 1982); *Fuchs v. Swanton Corp.,* 482 F.Supp. 83 (S.D.N.Y.1979); *Hundahl v. United Benefit Life Ins. Co.,* 465 F.Supp. 1349 (N.D. Tex.1979); *Bertozzi v. King Louie Int'l, Inc.,* 420 F.Supp. 1166 (D.R.I.1976).

In *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Supreme Court held that only purchasers or sellers of securities have standing to pursue private 10b–5 actions for damages. In the cases cited above, the courts have indicated that plaintiffs who are not seeking damages, but only injunctive relief, need not satisfy the *Blue Chip Stamps* standing requirement. *See, e.g., Fuchs,* 482 F.Supp. at 90; *Hundahl,* 465 F.Supp. at 1358. Plaintiffs here contend that these cases clearly hold that so long as the plaintiff is an owner of the affected securities, he has standing to sue to enjoin fraudulent practices. Plaintiffs' Mem. at 7–9.

Plaintiffs argue that if nontrading shareholders have standing to sue for injunctive relief, plaintiffs obviously have standing to do so since they purchased Graphic stock during the course of defendants' alleged misconduct. In short, plaintiffs argue that because they meet the *Blue Chip Stamps* standing test applicable to actions for damages, *a fortiori* they satisfy the less demanding standard applicable when only injunctive relief is sought. Plaintiffs' Mem. at 7.

That argument involves a fundamental error in logic. To have standing under *Blue Chip Stamps,* a plaintiff must be a purchaser or seller. But the converse is not true; not every purchaser or seller has standing. As I discussed above, a plaintiff must also plead and prove that he has suffered some injury in order to bring a 10b–5 claim for damages. *See, e.g.,*

*Fershtman v. Schectman,* 450 F.2d 1357, 1361 (2d Cir.1971), *cert. denied,* 405 U.S. 1066, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972); *Levine v. Seilon, Inc.,* 439 F.2d 328, 335 (2d Cir.1971); *Shults v. Henderson,* 625 F.Supp. 1419, [Current] Fed.Sec.L.Rep. (CCH) ¶ 92,468, at 92,860–61 (W.D.N.Y. Jan. 7, 1986); *Rubenstein v. IU Int'l Corp.,* 506 F.Supp. 311, 318 (E.D.Pa.1980). Thus, the fact that plaintiffs purchased Graphic stock does not give them standing to assert a 10b–5 claim absent factual allegations of injury to them.

Similarly, in the cases cited by plaintiffs, courts have stated that shareholders who were not purchasers or sellers may bring 10b–5 actions for injunctive relief. But again the converse is not true; not every shareholder may bring such an action. The shareholder must still allege that he has suffered or will suffer some injury if the injunctive relief is not granted. It is not enough to allege simply that an injunction is necessary to protect the public from inaccurate and misleading information. None of the cases cited by plaintiffs suggests otherwise.

Admittedly, some of the courts have noted that "[d]eceitful manipulation of the market price of publicly-owned stock is precisely one of the types of injury to investors at which the ['34] Act and [rule 10b–5] were aimed" and that "stockholders are ... logical plaintiffs to play 'an important role in enforcement' of the Act" by seeking injunctive relief. *E.g., Mutual Shares Corp.,* 384 F.2d at 546–47; *see also Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 194–95 (3d Cir.1976); *Fuchs,* 482 F.Supp. at 90. Not surprisingly, plaintiffs find solace in such statements, and argue that they support plaintiffs' claim of standing in this case. Plaintiffs' Mem. at 11–12. However, a close reading of the cases cited by plaintiffs reveals that the courts have not conferred standing on all shareholders seeking to correct fraudulent practices for the benefit of the investing public.

Indeed, in a number of the cases cited by plaintiffs, the courts explicitly noted that the plaintiff must show that the alleged

violation will cause him harm. For example, in *Hundahl,* the court stated that a "plaintiff requesting injunctive relief must demonstrate that the continuation of past and present practices will injure *him.*" 465 F.Supp. at 1358 (emphasis added). In *Fuchs,* Judge Sand made a nearly identical statement. 482 F.Supp. at 90. Similarly, in *Kahan,* the court stated that a plaintiff has standing to assert an injunctive claim if he "can establish a causal connection between the violations alleged and *plaintiff's loss.*" 424 F.2d at 173 (emphasis added). Finally, in *Bertozzi,* the court stated that plaintiffs have standing to sue for injunctive relief "to prevent consummation of and *their resultant injury* from an asserted § 10(b)/10b–5 violation." 420 F.Supp. at 1177 (emphasis added).

In the other cases cited, the courts did not explicitly state that the plaintiffs must show that continuation of the defendants' misconduct would harm them in order to have standing to sue for injunctive relief. Nonetheless, the facts of those cases make clear that the plaintiffs would suffer some harm if the defendants' alleged fraud were not halted. *See, e.g., Davis,* 526 F.2d at 1288–89 (plaintiff alleged he would be forced to sell his shares at depressed prices if defendants' conduct were not enjoined); *Mutual Shares Corp.,* 384 F.2d at 541–42 (plaintiff minority shareholders alleged that defendant majority shareholder was manipulating market in order to purchase minority shareholders' stock at less than the true value). As I have explained above, plaintiffs in this case have not alleged facts, as opposed to mere conclusory statements, that would support an inference that a continuation of defendants' alleged misconduct will injure *them.*

It is not enough for plaintiffs to allege that the investing public has been or will be misled by defendants' alleged fraud. For a variety of reasons, the Court must be cautious in extending the standing of uninjured parties to represent the interests of others. First, federal courts have jurisdiction to render decisions only in connection with actual cases or controversies. Where, as here, there is no one before the Court who can rightfully complain of any past or imminent future injury, any opinion the Court might render would be purely advisory. Second, a party that cannot demonstrate an injury has no stake in the outcome of a suit, and therefore may not represent adequately the interests of others who have in fact suffered harm. Finally, granting unaggrieved persons standing to sue could open the door to potential litigation abuses. *See generally Blue Chip Stamps,* 421 U.S. at 739–49, 95 S.Ct. at 1926–32. For example, although I have not considered their allegation in reaching my decision, defendants contend that plaintiffs brought this case solely to gain a political advantage in a pending proxy contest.

Of course, I do not suggest that plaintiffs are without standing to seek some legal relief for defendants' alleged misconduct. The complaint clearly states claims for common law fraud, breach of fiduciary duty, waste of corporate assets, and misappropriation of corporate opportunities. But the Delaware Chancery court is the appropriate forum to air those allegations. The federal securities laws were not designed to provide a remedy for these types of malfeasance by corporate management. *Santa Fe Indus. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977).

For all of these reasons, I conclude that plaintiffs lack standing to assert a 10b–5 claim. I need not and do not address defendants' other attacks on the securities claim, and, having concluded that plaintiffs' federal claim must be dismissed, I decline to exercise pendent jurisdiction over plaintiffs' derivative state law claims. Defendants' motion to dismiss the complaint is granted.

SO ORDERED.