**CLEMENTE GLOBAL GROWTH FUND, INC., Plaintiff,**

v.

**T. Boone PICKENS, III, Oliver R. Grace, Jr., John S. Grace, Grace–Pickens Acquisition Corp., Sumter Partners, L.P., Grace–Merrill, L.P., Drake Associates L.P., Anglo American Security Fund, L.P., Sterling Grace Capital Management, L.P., and Churchill Associates, L.P., Defendants.**

88 Civ. 5317 (JFK).

United States District Court, S.D. New York.

Jan. 23, 1990.

Gaston & Snow, New York City (Charles M. Mattingly, Donald N. Cohen, of counsel), for plaintiff.

Baker & Botts, Dallas, Tex. (Robert W. Jordan, of counsel), Davis, Markel & Edwards, New York City (Dennis H. Tracey, III, of counsel), for defendants T. Boone Pickens, III and Sumter Partners, L.P.

Olshan Grundman Frome Rosenzweig & Orens, New York City (Thomas J. Fleming, of counsel), for defendants Oliver R. Grace, Jr., John S. Grace, Grace–Pickens Acquisition Corp., Grace–Merrill, L.P., Drake Associates, L.P., Anglo American Security Fund, L.P., Sterling Grace Capital Management, L.P., and Churchill Associates, L.P.

## OPINION AND ORDER

KEENAN, District Judge.

### BACKGROUND

The central facts of this case are set forth in *Clemente Global Growth Fund, Inc. v. Pickens,* 705 F.Supp. 958 (S.D.N.Y. 1989), familiarity with which is assumed. There, this Court ruled that plaintiff, a closed-end management investment company (the "Fund"), had standing to sue to enforce § 12(d)(1) of the Investment Company Act of 1940 (the "1940 Act") and that plaintiff was entitled to a preliminary injunction enjoining defendants from closing a tender offer for up to 100% of plaintiff's stock.

Although the Court will avoid repetition of its prior decision where possible, a significant change in the circumstances surrounding the proposed tender offer necessitates frequent comparison of the factual background existing in January, 1989 with that today in January, 1990. Most notably T. Boone Pickens, III and Sumter Partners, L.P. ("Sumter") have announced that they have abandoned the tender offer and intend to sell all or substantially all of the Fund stock which they presently hold. This Court held in its previous decision that Sumter satisfied the definition of an investment company and had over 100 beneficial owners under the counting mechanisms of the 1940 Act. *See Clemente,* 705 F.Supp. at 964–68; 15 U.S.C. § 80a–3(c)(1)(A). Accordingly, Grace Pickens Global Acquisition Partners ("GPGAP"), the tender offer vehicle consisting of Sumter and five other limited partnerships, could not lawfully acquire more than 3% of the Fund's stock under § 12(d)(1)(A) of the 1940 Act, 15 U.S.C. § 80a–12(d)(1)(A).

The case is now before this Court on the application of T. Boone Pickens, III and his partnership, Sumter, for summary judgment or, alternatively, vacatur of the preliminary injunction. The other defendants have likewise moved for vacatur of the preliminary injunction and dismissal of the second amended complaint or, alternatively, for summary judgment. Plaintiff has

cross-moved against all of the defendants for an order directing them to sell their Fund shares in excess of 3% of the Fund's outstanding voting stock. For the reasons detailed below, the Court denies all of the parties' motions.

## FACTS

On April 19, 1989 the GPGAP partnership agreement was amended to effect Sumter's withdrawal from the partnership. The amendment also provided that the remaining partners would be associated under the name Grace Global Acquisition Partners ("Grace Global"). The defendants emphasize that the cleavage between Sumter and the other members of Grace Global was absolute and irrevocable. On April 21 Grace Global notified the Securities and Exchange Commission of these changes in an amendment to the group's Schedule 13D and 14D–1 filings. The amendment represents that "[i]n the event Grace Global and its partners obtain control of the Fund, Sumter will not participate financially or otherwise." Grace Def't's Exh. A. In addition, Sumter filed a separate Schedule 13D confirming the split. Sumter avows in this filing that there are no "contracts, arrangements, understandings or relationships (legal or otherwise) among" Sumter and its former partners. Sumter also states that it will not acquire any more Fund shares and that it intends "to dispose of all or substantially all" of the Fund shares it holds. Grace Def't's Exh. B.

Apart from Sumter's withdrawal, the composition of the tender offer vehicle is unchanged. Grace Global is a general partnership with five general partners, each of which is a limited partnership: Anglo American Security Fund, L.P. ("Anglo American"); Sterling Grace Capital Management, L.P. ("Sterling Grace"); Drake Associates, L.P. ("Drake"); Grace–Merrill, L.P. ("Grace–Merrill"); and Churchill Associates, L.P. ("Churchill"). The general partners in Grace Global maintain that each partner actively participates in management and that no partner has an expectation of profits derived solely from the efforts of others.

Sumter's 46% stake in the former GPGAP is now gathered in the two Grace Global partners with the greatest economic resources: Anglo American and Sterling Grace. If all Fund shares are now tendered, Grace Global will be funded as follows:

| | |
|---|---|
| Anglo American | 38.6% |
| Sterling Grace | 44.6% |
| Drake | 4.3% |
| Grace–Merrill | 4.3% |
| Churchill | 8.2% |

Plaintiff does not dispute that each of the five limited partnerships that comprise Grace Global has fewer than 100 beneficial securities owners. Plaintiff challenges, however, Grace Global's assertion that this conclusion attaches when the five are regarded as a group or as Grace Global. *See* Mattingly Aff. ¶¶ 31, 39–45. Plaintiff also contends that a factual question exists with respect to the completeness of the split between Sumter and the other limited partnerships.

## DISCUSSION

Sumter contends that it has decided the game is not worth the candle and thus has abandoned the tender offer. To demonstrate its good faith, Sumter points out that it has severed all ties to the other limited partnerships and avows that no agreements or understandings exist between those limited partnerships and Sumter. Sumter has also announced that it intends to sell all or substantially all of its Fund stock. On this basis Sumter argues that the Fund's claims against it are moot and therefore the injunction entered against it should be vacated and summary judgment entered in its favor.

■ A defendant seeking to dismiss a case as moot bears a heavy burden. *See United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953). This burden is not satisfied until it is " '*absolutely clear* that the alleged wrongful behavior could not reasonably be expected to recur.' " *Gwaltney of Smithfield v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 66, 108 S.Ct. 376, 386, 98

1442

L.Ed.2d 306 (1987) (quoting *United States v. Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968)) (emphasis in *Gwaltney*). *Accord R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 106–07 (2d Cir.1989).

■ Sumter relies heavily on *Trane Co. v. O'Connor Securities*, 718 F.2d 26 (2d Cir.1983) to bolster its contention that plaintiff's claims against it are moot. In *Trane*, plaintiff company was denied a preliminary injunction against two limited partnerships that had acquired over eight percent of plaintiff's stock, despite the presence of misleading statements in defendants' Schedule 13D because plaintiff had not established irreparable harm. During the pendency of plaintiff's appeal from the denial, defendants sold their entire holdings of plaintiff's stock and moved to dismiss the appeal as moot. *See id.* at 27.

The Second Circuit Court of Appeals granted defendants' application, holding that "[s]ince the defendants *in fact liquidated* their entire position, there are no remaining 'live' issues on this appeal." *Id.* (emphasis added). The Court recognized the possibility that defendants could acquire additional stock, but concluded that this did not animate plaintiff's request to enjoin future purchases of its stock by defendants. *See id.*

Sumter's reliance on *Trane* is misplaced. As the Supreme Court has stated, "voluntary cessation of allegedly illegal conduct ... does not make [a] case moot." *W.T. Grant*, 345 U.S. at 632, 73 S.Ct. at 897. In *Trane*, the defendants actual sale of their holdings rendered it "abstractly ... conceivable" that they again would acquire a sufficient amount of plaintiff's stock to require a Schedule 13D filing. *Trane*, 718 F.2d at 27. Here, Sumter *continues* to hold its Fund stock in violation of § 12(d)(1)(A) of the 1940 Act. While the Court does not question Sumter's principals' candor, it cannot rule as a matter of law that it is absolutely clear that the alleged wrongful accumulation of Fund stock could not reasonably be expected to recur. Indeed, until the alleged § 12(d)(1)(A) viola-

tion ceases, it is impossible to state that it is unlikely to be revived. *Cf. Fuchs v. Swanton Corp.*, 482 F.Supp. 83, 90 (S.D.N.Y.1979) (declining to dismiss action as moot despite defendant's statement that it "presently considers its previous attempt [of merging] ... abandoned").

■ Moreover, on a motion for summary judgment, the court may not resolve disputed factual issues; it may only assess whether factual issues sufficient to require a trial are at hand. *See Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). In doing so, "all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988); *see also Curry Road Ltd. v. K Mart Corp.*, 893 F.2d 509, 511 (2d Cir. 1990). With these principles in mind, the Court concludes that there is a genuine factual issue concerning whether Sumter is truly independent of Grace Global and whether an agreement or understanding is in place between the two regarding disposition of Sumter's Fund shares.

Despite its avowed intention to wash its hands of this matter, Sumter on two separate occasions declined to sell all or substantially all of its holdings to " 'friends' of Clemente's management" at market prices of $.85 per share or more above its purchase price of the shares. Pickens Aff. ¶ 8. Sumter responds that its refusal to sell on these occasions was an effort to avoid participation in a "greenmail" transaction. *See* 26 U.S.C. § 5881. The *sine qua non* of a greenmail transaction is an " 'offer [by the target company] to repurchase the investor's shares at a premium above the market price.' " *Amalgamated Clothing & Textile Workers v. Murdock*, 861 F.2d 1406, 1408 n. 2 (9th Cir.1988) (quoting Note, *Greenmail: Targeted Stock Repurchases and the Management–Entrenchment Hypothesis*, 98 Harv.L.Rev. 1045, 1045 (1985)); *see also* 26 U.S.C.

§ 5881(b)(3). Plaintiff's counsel avers that the two rejected offers were made at market price. *See* Mattingly Aff. ¶ 13. This is plainly sufficient to preclude entry of summary judgment on the ground that the offers to purchase Sumter's stock have no probative value here because they would have constituted greenmail.

The Fund has not yet conducted discovery on the issue of Sumter's independence. The Fund asserts that Sumter has withdrawn from the tender offer group to allow its former partners to proceed legally, intending to substitute its capital contribution with its stock by tendering the stock to Grace Global. If this is accurate, then Sumter's actions might give rise to a violation of section 48(a) of the 1940 Act, which bars an entry from making an acquisition indirectly that it could not make directly. *See* 15 U.S.C. § 80a–47(a). Moreover, Sumter's failure to disclose such an agreement or understanding would violate the disclosure provisions of the securities laws. The absence of discovery calculated to explore the sufficiency of plaintiff's "clandestine agreement" allegation renders summary judgment in favor of Sumter inappropriate. *See Federal Ins. Co. v. Mallardi*, 696 F.Supp. 875, 884 (S.D.N.Y.1988) (Knapp, J.).

The Grace Global defendants also move for summary judgment and vacatur of the preliminary injunction. As in Sumter's case, the granting of these applications is premature. First, as discussed *supra*, a factual issue concerning the completeness of Sumter's retreat from the tender offer exists. If Sumter remains involved in the contemplated tender offer, whether directly or indirectly on the facts presently before the Court, the offer will run afoul of § 12(d)(1)(A) of the 1940 Act. *See Clemente Global Growth Fund, Inc. v. Pickens*, 705 F.Supp. 958, 967–69 (S.D.N.Y.1989); Amicus Curiae Brief of The SEC at 5, 13 n. 10.

Furthermore, it remains unclear whether Grace Global is an investment company within the understanding of § 3(a)(1) of the 1940 Act. To be an investment company, an entity must issue securities. *See* 15 U.S.C. § 80a–3(a). Additionally, that entity must be primarily engaged in investing, reinvesting or trading in securities. *See* § 80a–3(a)(1). In its *amicus curiae* brief before the Second Circuit, the SEC stated that "[a] conclusion cannot be reached, on the basis of the facts found by the district court, as to whether GPGAP is an investment company." SEC Brief at 14.[1]

The Grace Global defendants have embraced the question raised by the SEC and elevated it to a legal conclusion. They contend that Grace Global, like GPGAP before it (and the organized investment group before GPGAP), does not issue securities and therefore cannot, as a matter of law, be an investment company. As the SEC observed in its brief, general partnership interests *"usually* are not securities, but may be under certain factual circumstances." SEC Brief at 14 (emphasis in original). A general partnership interest may be deemed a security when "the partnership interest ... satisf[ies] the *Howey* test." *Hirsch v. duPont*, 396 F.Supp. 1214, 1220 (S.D.N.Y.1975), *aff'd*, 553 F.2d 750 (2d Cir.1977). In *SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), the Supreme Court, in defining "investment contracts" for purposes of the Securities Exchange Act of 1934, stated: "[t]he test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *Id.* at 301, 66 S.Ct. at 1104. In a later exposition of the subject, the Supreme Court observed: "[t]he touchstone [of *Howey* ] is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *United Housing*

---

1. This assertion by the SEC is not inconsistent with this Court's granting of a preliminary injunction against GPGAP. As the SEC recognized, a finding that *"any"* of the limited partnerships was "an investment company, and thus subject to the restraints of Section 12(d)(1)(A)" was fatal to GPGAP's proposed tender offer. SEC Brief at 13 n. 10 (emphasis in original). This Court found, and the SEC agreed, that Sumter in and of itself was an investment company not exempted from the constraints of § 12(d)(1)(A) by § 3(c)(1).

*Found., Inc. v. Forman,* 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975). If a triable issue exists regarding whether any putative general partnership interest in Grace Global derives its profits through the endeavors of others, summary judgment may not be employed.

The Grace Global defendants devote a considerable portion of their papers to arguing that each of the five partners has a voice in the affairs of Grace Global and that "management" is "vested in the Partners." General P'ship Agreement at ¶ 3.1. They maintain that no passive investor is afoot.

While this may ultimately prove to be so in this case, a motion for summary judgment, where all inferences are to be indulged in favor of the non-moving party, is not the appropriate vehicle for establishing the point. As plaintiff notes, under the partnership agreement Churchill, which is controlled by John and James Pinto, cannot overrule any decisions of the Grace interests because the Grace interests control most Grace Global votes. *See* General P'ship Agreement at ¶ 3.1. Moreover, Churchill (like the other partners) cannot withdraw from the partnership absent the consent of all partners. Each partner save Churchill is controlled by Grace interests. An inference certainly can be drawn that Churchill's options in management affairs are tantamount to a Hobson's choice. Greater discovery must be conducted before all doubt can be removed over whether Churchill's partnership interest is in economic reality a limited partnership interest.[2]

Thus, because factual issues material to a determination of the legality of Grace Global's investment remain, summary judgment and vacatur are inappropriate.

■ The Fund has cross-moved for an order directing all defendants to sell the Fund shares they have acquired in excess of 3% of the outstanding voting stock of that company. The Court believes that the remedy of divestiture, if appropriate, is premature. As the Third Circuit Court of Appeals noted in a case where § 12(d)(1)(A) was alleged to have been violated: "[i]t may be that, *at final hearing,* [defendant] will be forced to divest itself of all [plaintiff] shares in excess of 3%." *Bancroft Convertible Fund, Inc. v. Zico Investment Holdings Inc.,* 825 F.2d 731, 739 (3d Cir. 1987) (emphasis added). Upon the completion of discovery, and after full hearing, plaintiff's application may be renewed.

### CONCLUSION

For the reasons stated above, the Court denies the applications of all parties. Discovery is to proceed. The parties are instructed to appear for a status conference on March 9, 1990 at 12:15 p.m. in Courtroom 444.

SO ORDERED.

---

**2.** Limited partnership interests generally are considered securities. *See Goodman v. Epstein,* 582 F.2d 388, 406 (7th Cir.1978), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979).